### Ex parte RAMSEY et al.

### Ex parte STEWART et al.

(District Court, S. D. Florida. July 17, 1920.)

Nos. 1094, 1096.

1. **Habeas corpus** ⬅111(1)—**Petitioners in custody of federal officer discharged from subsequent conviction in state court.**

   Petitioners must be discharged from custody under conviction for violation of state law for enforcement of prohibition; they, at the time they were taken into custody by the state authorities, having been in custody of a federal revenue officer under a charge of violating the Volstead Act.

2. **Habeas corpus** ⬅45(2)—**Federal court has jurisdiction to inquire into cause of detention by state officers.**

   A federal District Court, in which habeas corpus proceeding is brought by persons detained by state officers, has jurisdiction to inquire into the cause of detention.

3. **Intoxicating liquors** ⬅6—**States may legislate to enforce federal amendment.**

   Under Const. Amend. 18, giving Congress and the states concurrent power to enforce the amendment, a state can pass legislation for that purpose, at least where not in conflict with the federal legislation thereon.

4. **Intoxicating liquors** ⬅6—**Federal amendment prevails over prior state legislation.**

   It is immaterial that state legislation under Const. Amend. 18, to carry out the amendment, is enacted before the going into effect of the amendment.

5. **Intoxicating liquors** ⬅6—**Difference in punishment between state and federal statutes is not conflict.**

   Difference in punishment for possession of intoxicating liquors prescribed by the Volstead Act and Laws Fla. Extra Sess. 1918, c. 7736, in the former mere forfeiture of the liquor while the state statute provides a fine or imprisonment, does not constitute a conflict.

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**6. Intoxicating liquors ⚓242—Possession may be punished under state statute.**

Possession of intoxicating liquor, after Const. Amend. 18 and the Volstead Act went into effect, being a violation of a state law as well as the federal statute, the possessor may, in a prosecution under the state statute, be punished as therein prescribed.

**7. Intoxicating liquors ⚓222—Information need not negative exceptions in favor of lawful possession.**

Information for possession of intoxicating liquors contrary to Laws Fla. Extra Sess. 1918, c. 7736, § 3, declaring it unlawful to have possession of intoxicating liquors, "except as hereinafter provided," need not allege that such possession was not held under the authority contained in the subsequent sections, which alone contained the exceptions.

Habeas Corpus. Two proceedings, one by E. H. Ramsey and others, and the other by Cecil C. Stewart and others. Petitioners in first case discharged; those in second case remanded to custody.

Julian Hartridge, of Jacksonville, Fla., for petitioners Ramsey and others.

William A. Hallowes, Jr., and Miles W. Lewis, both of Jacksonville, Fla., for petitioners Stewart and others.

Herbert S. Phillips, U. S. Dist. Atty., of Tampa, Fla.

. CALL, District Judge. In the first of the above two cases the petition for the writ of habeas corpus. alleges that each of the three petitioners was convicted in the criminal court of record for Duval county, Fla., on two informations, charging that on July 2, 1920, they had in their possession, in Duval county, 1,000 quarts of liquor, and sentenced on such convictions to serve terms of six months in the county chain gang on each offense charged in such informations.

In the second the four petitioners allege that they are being held in jail by the sheriff of Duval county, awaiting trial in the criminal court of record for Duval county, upon information charging that they had in their possession on July 7, 1920, in Duval county, 1,500 quarts of intoxicating liquor. The petitioners in each of the cases seek to be discharged from custody on the ground that the state law under which the prosecutions are had is in violation of the Volstead Act (41 Stat. 305), and therefore void.

[1] In the first cases it is contended, also, that at the time the state authorities took the petitioners in custody they were then in the custody of a revenue agent of the United States government, under a charge of violating the Volstead Act. No question is made but that under this ground the petitioners must be discharged from the custody of the county officers. This leaves the question common to all the petitioners to be disposed of.

[2] Naturally the first question is as to the jurisdiction of this court to inquire into the cause of detention. This question must be answered in the affirmative upon authority of many adjudicated cases. The Eighteenth Amendment went into effect in January, 1920. After the proclamation of the ratification of the amendment, the Congress passed, over the President's veto, the act for the enforcement of the prohibi-

tion declared in the amendment; the House on the 27th and the Senate on the 28th of October, 1919.

The Legislature of the state of Florida, in 1917, proposed an amendment to the state Constitution forbidding the manufacture, sale, etc., of intoxicating liquors, which amendment was adopted at the general election in 1918. The Governor called a special session of the Legislature, elected at such election, which body passed chapter 7736, Laws of Florida, designed to enforce such amendment just adopted. This act was approved December 7, 1918, and went into effect January 1, 1919. The information in these cases charged a violation of section 3 of the act forbidding possession of intoxicating liquors by any person, except as provided in the act. The act, in a subsequent section, provided that persons might possess 4 quarts of distilled and 20 quarts of malt liquor in his bona fide residence for his personal and family use.

On June 7, 1920, the Supreme Court of the United States handed down its decision in the seven cases pending before it, in which the construction of the Eighteenth Amendment and the Volstead Act was involved. The court in its ninth conclusion say:

"The power confided to Congress by that section [section 2 of the amendment], while not exclusive, is territorially coextensive with the prohibition of the first section, embraces manufacture and other intrastate transactions, as well as importation, exportation, and interstate traffic, and is in no wise dependent on or affected by action or inaction on the part of the several states or any of them."

In considering the effect of the Eighteenth Amendment, the Volstead Act, and the recent decision of the Supreme Court of the United States on existing state legislation, it must be borne in mind that two of the seven cases were original actions brought by two states whose Legislatures had passed acts increasing the alcoholic strength of beverages over that given in the Volstead Act, and these suits were dismissed. The reason for such action, other than those expressed in the concurring opinion of the Chief Justice, is not given. The Chief Justice filed his concurring opinion, and, discussing the contentions of counsel before the court, says:

"It is said, conceding that the concurrent power given to Congress and to the states does not as a prerequisite exact the concurrent action of both, it nevertheless contemplates the possibility of action by Congress and by the states, and makes each action effective; but as under the Constitution the authority of Congress in enforcing the Constitution is paramount, when state legislation and congressional action conflict the state legislation yields to the action of Congress as controlling. But as the power of both Congress and the states in this instance is given by the Constitution in one and the same provision, I again find myself unable to accept the view urged, because it ostensibly accepts the constitutional mandate as to the concurrence of the two powers and proceeds immediately by way of interpretation to destroy it by making one paramount over the other."

The Chief Justice, in further announcing his decision, has this to say:

"In the first place, it is indisputable, as I have stated, that the first section imposes a general prohibition which it was the purpose to make universally and uniformly operative and efficacious. In the second place, as the prohi-

bition did not define the intoxicating beverages which it prohibited, in the absence of anything to the contrary, it clearly, from the very fact of its adoption, cast upon Congress the duty, not only of defining the prohibited beverages, but also of enacting such regulations and sanctions as were essential to make them operative when defined. In the third place, when the second section is considered with these truths in mind, it becomes clear that it simply manifests a like purpose to adjust, as far as possible, the exercise of the new powers cast upon Congress by the amendment to the dual system of government existing under the Constitution. In other words, dealing with the new prohibition created by the Constitution, operating throughout the length and breadth of the United States, without reference to state lines or distinctions between state and federal power, and contemplating the exercise by Congress of the duty cast upon it to make the prohibition efficacious, it was sought by the second section to unite national and state administrative agencies in giving effect to the amendment and legislation of Congress enacted to make it completely operative."

[3, 4] It is clear to my mind, from the conclusions reached by the majority of the court, as announced in its ninth conclusion, and from the discussion by Chief Justice White in his concurring opinion, that the second section of the amendment does vest certain powers of legislation in the states to carry out the purposes of the first section of the amendment. If I am correct in this conclusion, does it make any difference whether the legislative action of a state was taken before or after the going into effect of the amendment and the Volstead Act? I think not. Of course, I do not mean to say that the state could pass legislation which would so conflict with the congressional action as to make that a crime under the state law which would not be a crime under the Volstead Act. The decision of that particular question is not involved in these cases, and therefore I express no opinion on that subject. But if any effect is to be given to the second section of the amendment, then surely a state could pass legislation for the purpose of carrying out the amendment under the authority given in the amendment itself, which was not in violation of any provisions of the Volstead Act, and this it seems to me could be done either before or after the Eighteenth Amendment went into effect.

[5, 6] The Legislature of the state of Florida, as before noted, in December, 1918, enacted chapter 7736 of the Laws of Florida, at the special session called by the Governor, and section 3 of that act provides that it shall be unlawful for any person, association of persons, or corporation, or any agent or any employé of any person, association of persons, or corporation, to have in his, her, their, or its possession, custody, or control, in this state, any alcoholic or intoxicating liquors or beverages, except as hereinafter provided. Section 3 of title 2 of the Volstead Act provides as follows:

"No person shall on or after the date when the Eighteenth Amendment to the Constitution of the United States goes into effect, manufacture, sell, barter, transport, import, export, deliver, furnish or *possess* any intoxicating liquor except as authorized in this act."

I fail to perceive that there is any conflict whatever between these provisions. In fact, it might almost be said that the Volstead Act, being passed subsequent to chapter 7736, was copied from such act. The laws of Florida fix the penalty for the violation of that particular

section of the state law, and it is to enforce this penalty, as I understand it, that the informations in these cases were filed, and in the first case on which the trial and conviction was had.

While it is true that the Volstead Act affixes as the only penalty for the possession of alcoholic liquors the forfeiture of the liquor, which, etc., and the Florida statute provides a fine or imprisonment, yet such a difference in punishment does not constitute a conflict. As pointed out in some of the adjudicated cases, it is not necessary that the penalty should be identical. The act charged, if a violation of the state law and also an act of Congress, may be punished as provided in the laws, state and federal.

[7] It seems to me that an indictment or information which charged the possession, within the county, subsequent to the going into effect of the Eighteenth Amendment, of certain intoxicating liquor, would charge an offense against the Florida statute. If the defendant in the case relied upon showing that his possession was lawful by reason of the provisions subsequently contained in the act, such defense must be presented by the defendant. It would not invalidate the indictment or information because the act, in the Florida statute, provides for a lawful possession in subsequent sections; the exceptions not being contained in the section which forbids the possession of intoxicating liquors. It would not be necessary to state in the indictment or information that such possession was not held under the authority contained in the subsequent sections, to make such indictment or information valid. If the question should arise as to whether the limitation of quantity as pronounced in the Florida statute, and the question of right of possession as allowed under the Volstead Act, should control, it would then be time to decide the question thus raised.

Such being my conclusion in these matters, the defendants named in the second case will be remanded to the county authorities for a trial under the information filed in the criminal court of record. The three defendants named in the first case, on the ground heretofore noted, will have to be discharged from custody under said conviction.

It will be so ordered.